THE CENTRAL BRANCH UNION PACIFIC RAILROAD CO. *v.* THE WESTERN UNION TELEGRAPH CO.

*(Circuit Court, D. Kansas.* May 8, 1880.)

1. CONTRACT—ULTRA VIRES.—The Central Branch Union Pacific Railroad Company were authorized by act of congress to construct a railroad and telegraph line, as a part of the Union Pacific Railroad system, for 100 miles west of the Missouri river, upon the same terms and conditions, in all respects, as were provided for the construction of the railroad and telegraph line of the Union Pacific Railroad Company. *Held,* that a contract by such railroad with a telegraph company, whereby it divested itself of the right to manage and control the telegraph line and fix rates thereon, was *ultra vires* and void.

    *Atlantic & Pacific Telegraph Co.* v. *Union Pacific Ry. Co.,* 1 FED. REP. 745, followed.

2. SAME—SAME—RESTITUTION OF PROPERTY.—Where the railroad retook possession of such telegraph line, accompanied with legal proceedings to have the contract declared null and an account taken, the telegraph company cannot compel a restitution of the property under the contract pending such proceedings.

In Equity. Motion to Dissolve Injunction.

*Everest & Waggener,* for complainant.

*W. C. Webb, Peck, Ryan & Johnson, Karnes & Ess, Williams & Thompson* and *C. Beckwith,* for defendant.

FOSTER, D. J. The plaintiff filed its bill on the twenty-seventh day of February last, in the state court, setting forth its corporation, and its franchises granted under the act of congress entitled "An act to aid in the construction of a railroad and telegraph line from the Missouri river to the Pacific ocean, and to secure to the government the use of the same for postal, military, and other purposes," approved July 1, 1862, by which it was authorized to construct a railroad and telegraph line, as a part of the Union Pacific Railroad system, for 100 miles west of the Missouri river; that it did construct its railroad under the provisions of that act, and did enter into a contract, in 1867, with the defendant, the Western Union Telegraph Company, by which contract the plaintiff was to construct its telegraph line aforesaid by erecting the poles, putting on the insulators and one wire, and

the defendant was to furnish a main battery at Atchison, and instruments along the line for working the same, not to exceed 12 in number, and the defendant was to control said telegraph line, fix tariff of rates, and keep said line in repair; the plaintiff furnishing the operators, and paying the proceeds of the business to the defendant.

The railroad business was to be done without charge, except the eastern business in excess of $1,200 per annum, which excess was to be at half rates; the defendant having the right to string another wire on said line at its own expense, which it has since done.

The bill further alleges that said contract is null and void, being beyond its power to make, and in contravention of its rights and duties to the government and the public, under the said act of congress, and the amendments thereto, and alleging that it had taken and was in peaceable possession of its said line of telegraph, and praying an injunction against the defendant; that it be enjoined from taking possession, or interfering with plaintiff's possession, thereof, and that said contract be declared void, and that an account be taken between the said parties, etc.

On this showing, Judge Otis, of the second district, granted a temporary injunction or restraining order, and thereafter the defendant removed the cause to this court, and now moves for a dissolution of said injunction.

For the purposes of this motion it is not my intention to discuss any points of law fairly decided by Judge McCrary in the Omaha case, [*Atl. & Pacific Tel. Co.* v. *Union Pacific Ry. Co.* 1 FED. REP. 745,] but shall attempt to apply that decision, so far as practicable, to the facts in this case. Under the thirteenth section of the act of July 1, 1862, this company, plaintiff, was granted the right to build 100 miles of railroad and telegraph, west of the Missouri river, *upon the same terms and conditions*, in all respects, as were provided for the construction of the railroad and telegraph line of the Union Pacific Railroad Company. So it will be seen that the rights, privileges, and duties of the plaintiff company were identical with those of the Union Pacific Company.

Now, Judge McCrary has held that the contract by which the last-named company leased its telegraph line to the Atlantic & Pacific Telegraph Company, and divested itself of the right to manage and control the same, and fix rates thereon, was *ultra vires* and illegal.

He says, after citing the decision of the supreme court in *Thomas* v. *West Jersey Railroad Co.*:

"In my judgment the act of July 1, 1862, and its amendments, must be construed as chartering the Union Pacific Railroad Company, and devolving upon it *individually* and *personally* the power and duty of constructing, operating, and maintaining a line of telegraph as well as a railroad. * * * This power conferred was *personal,* and carried with it a duty and an obligation which could not be transferred."

This reasoning is equally applicable to this case, as the plaintiff stands on an equal footing in all respects with the Union Pacific Company, and for this motion I shall adopt Judge McCrary's construction of these contracts. This contract being void, had the railroad company in this case the right to repossess itself of the telegraph line, and exclude the defendant therefrom, without process of law?

In the Omaha case the circuit judge held that that company could not. The seizure of property from the possession of another, even though the title and right of possession be in the taker, at so early an hour as 2 o'clock in the morning—as was the case here—is not calculated to create the most favorable impression on a court of equity, and it raises a doubt whether such proceedings are prompted solely by a quickened conscience of duty to the government or the public, especially when that conscience has suddenly awakened from a Rip Van Winkle sleep of 13 years.

It is contended by the defendant, with much force, that, even though this contract be void, the plaintiff had no legal or equitable right to take possession of the property, against defendant's consent, without legal proceedings, and the more so as a part of the property taken, to-wit, 12 instruments and one wire, were, at least, the sole property of the defendant.

If I were passing upon the legality of this contract as an original question, and had any doubt of its invalidity, I should follow this rule as the most equitable and the safest, until a final hearing on the merits could be had. My understanding of the law is this: If this contract is *ultra vires* the railroad company, or is against public policy, it is absolutely void, and, so far as it is executory, neither party can maintain an action against the other for its breach. Nor can either party bring it forward to sustain or defeat a right of possession of property obtained under it, and if it involves any moral delinquency or turpitude, as *contra bonos mores*, the parties being *in pari delicto*, the courts leave them just where it finds them, and neither party has any standing in court for legal or equitable relief. *Thomas* v. *City of Richmond*, 12 Wall. 349, 354; Chitty on Contracts, (10th Am. Ed.) 709-732; *Roll* v. *Roquet*, 4 Ohio, 400, 419; *Moore* v. *Adams*, 8 Ohio, 372; *Dixon* v. *Olmstead*, 9 Vt. 310; *Foote* v. *Emmerson*, 10 Vt. 338; *Buck* v. *Albee*, 26 Vt. 184; *U. S. Bank* v. *Owens*, 2 Pet. 527, 538.

There is, however, a distinction made where the contract was in no respect immoral, or merely *malum prohibitum*. In such cases the courts have inquired into the relative delinquency of the parties, and administered justice between them. *Thomas* v. *Richmond, supra; Lowell* v. *Railroad Co.* 23 Pick. 32.

But that is not the relief the defendant is seeking here. It is asking an enforcement of the contract. It is true, in the Omaha case Judge McCrary ordered the property placed back into the possession of the telegraph company until an accounting should be had between the parties. In that case the railroad company had received stock of the telegraph company of the value of $150,000, and the railroad company had taken no legal proceedings to have the contract annulled, nor offered to account with the telegraph company, or return the consideration received.

It appeared equitable that it should account for what it had received, and under the equities of the case the judge made the order of restitution.

The facts in this case are quite different. At the same

time the plaintiff took possession of the line, which was done by removing the pins in the switch board of the Atchison office, and thus disconnecting the defendant's wire, it filed its bill asking that the contract be decreed null and void, and praying that an account be taken of the dealings between the parties.   The value of the property of the defendant taken by the plaintiff, and which it offers to return or account for, was not, comparatively speaking, of great value, and was so connected with the plaintiff's property as to make it impossible to interfere with the one without affecting the other.   There is another difficulty in this case: Under the contract all the operators on this line are the employes of the railroad company, and the offices or stations belong to that company. Now, a dissolution of this injunction, and granting another in favor of the defendant, might nominally restore the defendant's connection over this line of telegraph; but what practical benefit would that be to the defendant unless the employes of the railroad company could be compelled to work the line, or the defendant company be permitted to place operators in the stations of the railroad company to operate the wires?

This question involves largely the right of the defendant to have a decree for the specific performance of the contract.

Is this a case in which a specific performance could be had if the contract was legal?   To say the least, it would be very doubtful.   *Marble Co.* v. *Ripley*, 10 Wall. 339, 358–9; *Railroad Co. v. Railroad Co.* 13 Ohio St. 544.

In brief, this contract being absolutely void, and the plaintiff having taken peaceable possession of the property, accompanied with legal proceedings to have the contract declared null, and for an account to be taken between the parties, in my judgment the defendant cannot compel a restitution of the property under the contract pending the proceedings.

A temporary injunction may be continued until the session of court.

And on May 8th the following order was entered in said case:

*In the Circuit Court of the United States for the District of Kansas.*

THE CENTRAL BRANCH UNION PACIFIC RAILROAD COMPANY (otherwise known as the Atchison & Pike's Peak Railroad Company) *v.* THE WESTERN UNION TELEGRAPH COMPANY.

At Chambers, Topeka, Kansas, May 8, 1880.

Now comes the Central Branch Union Pacific Railroad Company, by J. P. Usher, and Everest & Waggener, its solicitors, and the Western Union Telegraph Company, by W. C. Webb, George R. Peck, and Tomlinson & Griffin, its solicitors, and thereupon came on to be heard the motion of the the defendant, the Western Union Telegraph Company, to vacate, set aside, and dissolve the temporary restraining order, granted herein on the twenty-seventh day of February, 1880, upon consideration whereof it is ordered by the court that said motion be and the same is hereby denied and overruled. And it is further ordered that the said temporary restraining order granted herein on the twenty-seventh day of February, 1880, be and the same is hereby continued in full force and effect until the regular term of this court, commencing at Leavenworth, in said district, on Monday, the seventh day of June, 1880, and until the further order of the court.

The motion of the defendant, Western Union Telegraph Company, for temporary injunction, came on to be heard, and was argued by counsel, on consideration whereof it is ordered that said motion be and the same is hereby denied and overruled.

C. G. FOSTER, Judge.